JUDGE FRANK MONTALVO

**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION**

FILED

2022 AUG 26  PM 2: 24

CLERK, US DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY _____
          DEPUTY

|  |  |
|---|---|
| **BRANDON CALLIER,** §<br>§<br>**Plaintiff,** §<br>§<br>**v.** §<br>§<br>**PAC WESTERN FINANCIAL LLC,** a Utah §<br>Limited Liability Company and **JASCOTT** §<br>**ENTERPRISES, LLC** a Florida Limited Liability §<br>Company §<br>§<br>**Defendants.** §<br>§ | **EP22CV0301** |

## PLAINTIFF'S ORIGINAL COMPLAINT

### PARTIES

1.      Plaintiff BRANDON CALLIER ("Plaintiff") a natural person, resident of the Western

District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.      Defendant PAC WESTERN FINANCIAL LLC dba UPWISE CAPITAL FUNDING

("Western") is a limited liability company organized and existing under the laws of Utah and can

be served via registered agent Corporation Service Company at 15 West South Temple, Suite

600, Salt Lake, Utah, 84101.

3.      Defendant JASCOTT ENTERPRISES, LLC ("JaScott") is a limited liability company

organized and existing under the laws of Florida, and can be served via registered agent Rodney

Hubbard at 14285 Midway Road, Ste 130, Addison, Texas 75001.

4.      Defendants Western and JaScott are hereinafter collectively referred to as

("Defendants").

## JURISDICTION AND VENUE

5.     **Jurisdiction.**  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101 because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

6.     **Personal Jurisdiction.**  This Court has general personal jurisdiction over the defendant because they have repeatedly placed calls to Texas residents, and derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

5.     **Venue.**  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

7.     This Court has venue over the defendants because the calls at issue were sent by or on behalf of the above-named defendants to the Plaintiff, a Texas resident.

## THE TELEPHONE CONSUMER PROTECTION ACT
## OF 1991, 47 U.S.C. § 227

9.     In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a

threat to interstate commerce generally. *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).

14.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that the consumer:  (1) received clear and conspicuous disclosure of the consequences of providing the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded messages by or on behalf of a specific seller; and (2) having received this information, agrees unambiguously to receive such calls at a telephone number the consumer designates. In addition, the written agreement must be obtained without requiring, directly or indirectly, that the agreement be executed as a condition of purchasing any good or service.

18.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC regulations "generally establish that the party on whose behalf a solicitation is made bears ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19.     The FCC confirmed this principle in 2013, when it explained that "a seller … may be held vicariously liable under federal common law principles of agency for violations of either section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d 946, 951 – 52 (9th Cir. 2009).

4

21.      A corporate officer involved in the telemarketing at issue may be personally liable under the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist. LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate actors can be individually liable for violating the TCPA where they had direct, personal participation in or personally authorized the conduct found to have violated the statute." (internal quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D. Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code § 302.101

22.      The Texas Business and Commerce code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas.

23.      The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

24.      Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

25.      The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

### FACTUAL ALLEGATIONS

26.     Plaintiff has been on the Do-Not-Call Registry since December 2007.

27.     Plaintiff has been besieged with phone calls related to a merchant cash advance (MCA).

28.     MCAs are unregulated "loans" made via an agreement to purchase future revenues of a business.  MCAs are designed to bypass usury laws that prevent companies from charging extraordinary interest rates.  MCAs often exceed 50% interest rates.

29.     Defendant Western employs, contracts and/or authorizes Independent Sales Organizations ("ISO") to solicit MCAs to business owners.

30.     Plaintiff has been inundated with phone calls from companies offering MCAs.  This includes receiving at least 111 phone calls from Defendant Western and Defendant JaScott on behalf of Defendant Western soliciting an MCA.

31.     On April 4, 2022, Plaintiff received the first of at least 111 phone calls from Defendants Western and JaScott.

32.     Prior to this phone call Plaintiff had never spoken to anyone at Western, had never filled out an application with Western, had never heard of Western, and had never established a business relationship with Western.

33.     Prior to the phone calls at issue in this Complaint Plaintiff had never filled out an application with JaScott, had never heard of JaScott, and had never established a business relationship with JaScott.

34.     Each and every phone call received by Plaintiff from Defendant Western was sent without the prior express written received and was not related to any emergency purpose.

35.     Each and every phone call received by Plaintiff from Defendant JaScott was sent without prior express written consent and not related to any emergency purpose.

36.    On April 4, 2022, Plaintiff received his first phone call from Defendant JaScott from phone number 612-662-4225.  Plaintiff did not answer this phone call. However, Plaintiff continued to receive phone calls from this phone number.

37.    On April 5, 2022, Plaintiff received a text message from 612-662-4225 stating "Can I call you?  This is Mark from JaScott investment.  We spoke yesterday."

38.    Mark from JasScott continued to call Plaintiff trying to solicit Plaintiff for an MCA.

39.    On April 12, 2022, Plaintiff filled out an application in order to determine who was behind the repeated attempt to lure Plaintiff into a high-interest MCA.

40.    On April 12, 2022, Plaintiff received a text message from phone number 612-662-4205 stating, "Hey Brandon, This is Mark (Fawzy) over here from JaScott Investment, I got good news for you call me back please." *Exhibit A.*

41.    On April 12, 2022, at 5:01 PM Plaintiff received an email from Dave Thurber ("Thurber"), a funding manager of Upwise, stating "I will be assisting with the closing process here.  Per Mark's email, please send over the business voided check and your driver's license. We will send you contracts some time tomorrow after we have received both." *Exhibit B.*

42.    Upwise Capital Funding ("Upwise") is a DBA of Defendant Western.

43.    Plaintiff sent his driver's license and voided check in order to learn the identity of the MCA lender.

44.    On April 13, 2022, Plaintiff was sent a contract via email from Defendant Pac Western. The contract sent to Plaintiff states "PAC WESTERN FINANCIAL LLC DBA UPWISE CAPITAL FUNDING" on at least six pages of the contract. *Exhibit C.*

45.    The Utah Secretary of State's website lists Upwise as a DBA of Defendant Western. *Exhibit D.*

46.     All calls received by Plaintiff from Upwise were in fact made by Defendant Western.

47.     Defendants continued with unsolicited phone calls and text messages attempting to get Plaintiff to sign a contract and take the high-interest MCA.

48.     On April 19, 2022, as a direct result of the phone calls received by Plaintiff from Defendants Western and JaScott Plaintiff received an email from Defendant Western containing a contract offer for an MCA and requesting Plaintiff complete the funding process, review the agreement, and send a screenshot or printout of Plaintiff's complete month-to-date bank activity. *Exhibit E.*

49.     **DNC Request #1**:  On April 19, 2022, Plaintiff sent a text message to Mark at 615-662-4205 stating, "I am getting bombarded with phone calls from funding agencies.  Literally 50 per day.  I can't even work because of the calls.  I don't know whose who.  I'm sending this to everyone.  Nothing personal.  Please don't call or text again.  *Exhibit F.*

50.     Mark ignored Plaintiff and text Plaintiff two minutes later.  *Exhibit G.*

51.     **DNC Request #2**:  On April 20, 2022, at 11:03 AM Plaintiff received a phone call from Thurber.  Plaintiff told Thurber he was not interested and to not call again.  Plaintiff then disconnected the phone call.

52.     **DNC Request #3**:  On April 20, 2022, at 11:03 AM Plaintiff received another phone call from Thurber immediately after the phone call referenced in paragraph 51.  Plaintiff again told Thurber to not call again.

53.     On April 20, 2022, at 11:04 AM Plaintiff received a text message from phone number 561-376-3680, the phone number owned by Thurber, stating "So will you be signing?  I'll text you since you don't want me to call."  *Exhibit H.*

54.     **DNC Request #4**:  On April 20, 2022, at 12:36 PM Plaintiff received a phone call from 612-662-4205.  Plaintiff answered the phone call and asked Mark "Didn't I say don't call anymore?"

55.     On April 21, 2022, Plaintiff received an email from Fawzy stating "I am really sorry to hear you are getting bombarded with so many calls from so many financial companies but here is the thing I am your money guy….Please check your inbox you got the contract paper from info@pacwesternfinancial.com." *Exhibit I.*

56.     Fawzy acknowledged in paragraph 55 he had indeed received Plaintiff's message informing him of a "bombardment" of phone calls and asking him to not call Plaintiff anymore.

57.     Defendants Western and JaScott called Plaintiff at least 65 times after the initial Do Not Call Request.

58.     Plaintiff sent internal Do-Not-Call Policy requests to Defendants Western on April 22, 2022, and JaScott on August 24, 2022.

59.     Table below displays calls and text messages made to Plaintiff by the Defendants Western and JaScott:

**TABLE A**

| Number: | Date | Time | Caller ID | Notes |
|---|---|---|---|---|
| 1 | 04/04/2022 | 12:59 PM | 612-662-4225 | Missed Call |
| 2 | 04/04/2022 | 1:32 PM | 612-662-4225 | Missed Call |
| 3 | 04/05/2022 | 11:37 AM | 612-662-4225 | Declined Call |
| 4 | 04/05/2022 | 11:38 AM | 612-662-4225 | TEXT |
| 5 | 04/05/2022 | 2:48 PM | 612-662-4225 | 3 MIN |
| 6 | 04/06/2022 | 11:10 AM | 612-662-4225 | Missed Call |
| 7 | 04/06/2022 | 4:26 PM | 612-662-4225 | Missed Call |
| 8 | 04/08/2022 | 10:32 AM | 612-662-4225 | Declined Call |
| 9 | 04/08/2022 | 10:33 AM | 612-662-4225 | Text |
| 10 | 04/08/2022 | 1:44 PM | 612-662-4225 | 4 MIN |
| 11 | 04/08/2022 | 2:47 PM | 612-662-4225 | 2 MIN |
| 12 | 04/08/2022 | 2:55 PM | 612-662-4225 | 1 MIN |
| 13 | 04/08/2022 | 2:05 PM | 612-662-4225 | Missed Call |

| 14 | 04/12/2022 | 2:06 PM | 612-662-4205 | TEXT |
|----|------------|---------|--------------|------|
| 15 | 04/12/2022 | 2:06 PM | 612-662-4205 | TEXT |
| 16 | 04/12/2022 | 4:16 PM | 612-662-4205 | 4 min phone call |
| 17 | 04/12/2022 | 4:56 PM | 612-662-4205 | Missed Call |
| 18 | 04/12/2022 | 4:58 PM | 612-662-4205 | TEXT |
| 19 | 04/13/2022 | 8:39 AM | 929-305-1045 | TEXT |
| 20 | 04/13/2022 | 8:39 AM | 929-305-1045 | TEXT |
| 21 | 04/13/2022 | 8:40 AM | 929-305-1045 | TEXT |
| 22 | 04/13/2022 | 10:16 AM | 612-662-4205 | 2 MIN |
| 23 | 04/13/2022 | 10:18 AM | 612-662-4205 | TEXT |
| 24 | 04/13/2022 | 12:34 PM | 929-305-1045 | TEXT |
| 25 | 04/13/2022 | 12:46 PM | 612-662-4205 | Missed Call |
| 26 | 04/13/2022 | 12:47 PM | 612-662-4205 | TEXT |
| 27 | 04/13/2022 | 1:39 PM | 516-376-3680 | DECLINED CALL |
| 28 | 04/13/2022 | 1:40 PM | 612-662-4205 | MISSED CALL |
| 29 | 04/13/2022 | 2:56 PM | 612-662-4205 | MISSED CALL |
| 30 | 04/13/2022 | 2:57 PM | 612-662-4205 | MISSED CALL |
| 31 | 04/13/2022 | 4:31 PM | 612-662-4205 | MISSED CALL |
| 32 | 04/14/2022 | 9:22 AM | 612-662-4205 | MISSED CALL |
| 33 | 04/14/2022 | 12:41 PM | 612-662-4205 | MISSED CALL |
| 34 | 04/14/2022 | 2:32 PM | 612-662-4205 | MISSED CALL |
| 35 | 04/15/2022 | 1:00 PM | 612-662-4205 | TEXT MESSAGE |
| 36 | 04/15/2022 | 1:00 PM | 612-662-4205 | TEXT MESSAGE |
| 37 | 04/19/2022 | 7:31 AM | 516-376-3680 | TEXT MESSAGE |
| 38 | 04/19/2022 | 7:31 AM | 516-376-3680 | TEXT MESSAGE |
| 39 | 04/19/2022 | 7:31 AM | 516-376-3680 | TEXT MESSAGE |
| 40 | 04/19/2022 | 9:49 AM | 516-376-3680 | MISSED CALL |
| 41 | 04/19/2022 | 10:05 AM | 516-376-3680 | MISSED CALL |
| 42 | 04/19/2022 | 10:12 AM | 612-662-4205 | MISSED CALL |
| 43 | 04/19/2022 | 11:21 AM | 516-376-3680 | SPOKE TO CONSTANTS |
| 44 | 04/19/2022 | 11:45 AM | 516-376-3680 | MISSED CALL |
| 45 | 04/19/2022 | 2:27 PM | 612-662-4205 | 1 MIN CALL |
| 46 | 04/19/2022 | 2:29 PM | 612-662-4205 | TOLD NEVER TO CALL BACK IN TEXT |
| 47 | 04/19/2022 | 2:29 PM | 612-662-4205 | TEXT MESSAGE |
| 48 | 04/19/2022 | 2:29 PM | 612-662-4205 | TEXT MESSAGE |
| 49 | 04/19/2022 | 2:29 PM | 612-662-4205 | TEXT MESSAGE |
| 50 | 04/19/2022 | 2:29 PM | 612-662-4205 | TEXT MESSAGE |
| 21 | 04/19/2022 | 2:30 PM | 612-662-4205 | 1 MIN CALL |

| 52 | 04/19/2022 | 2:36 PM | 612-662-4205 | MISSED CALL |
|----|------------|---------|--------------|-------------|
| 53 | 04/19/2022 | 3:00 PM | 612-662-4205 | MISSED CALL |
| 54 | 04/19/2022 | 4:26 PM | 612-662-4205 | MISSED CALL |
| 55 | 04/20/2022 | 9:37 AM | 612-662-4205 | MISSED CALL |
| 56 | 04/20/2022 | 11:02 AM | 516-376-3680 | DNC REQUEST |
| 57 | 04/20/2022 | 11:03 AM | 516-376-3680 | CALLED RIGHT BACK ANOTHER DNC REQUEST |
| 58 | 04/20/2022 | 11:04 AM | 516-376-3680 | TEXT CONFIRMING NOT TO CALL REQUEST |
| 59 | 04/20/2022 | 12:36 PM | 612-662-4205 | DNC REQUEST |
| 60 | 04/20/2022 | 2:34 PM | 516-376-3680 | TEXT MESSAGE |
| 61 | 04/20/2022 | 2:34 PM | 516-376-3680 | TEXT MESSAGE |
| 62 | 04/21/2022 | 2:53 PM | 612-662-4205 | 5 MIN CALL |
| 63 | 04/21/2022 | 4:09 PM | 612-662-4205 | Missed call |
| 64 | 04/21/2022 | 4:09 PM | 612-662-4205 | TEXT MESSAGE |
| 65 | 04/21/2022 | 4:53 PM | 612-662-4205 | MISSED CALL |
| 66 | 04/22/2022 | 9:19 PM | 612-662-4205 | MISSED CALL |
| 67 | 04/22/2022 | 9:47 AM | 612-662-4205 | 4 MIN CALL |
| 68 | 04/22/2022 | 10:56 AM | 612-662-4205 | 4 MIN CALL |
| 69 | 04/22/2022 | 12:27 PM | 612-662-4205 | MISSED CALL |
| 70 | 04/22/2022 | 1:15 PM | 612-662-4205 | MISSED CALL |
| 71 | 04/22/2022 | 1:30 PM | 612-662-4205 | MISSED CALL |
| 72 | 04/22/2022 | 1:31 PM | 612-662-4205 | TEXT MESSAGE |
| 73 | 04/22/2022 | 1:32 PM | 612-662-4205 | MISSED CALL |
| 74 | 04/22/2022 | 1:38 PM | 612-662-4205 | TEXT MESSAGE |
| 75 | 04/22/2022 | 1:38 PM | 612-662-4205 | TEXT MESSAGE |
| 76 | 04/22/2022 | 2:46 PM | 612-662-4205 | 2 MISSED CALLS |
| 77 | 04/22/2022 | 3:40 PM | 612-662-4205 | MISSED CALL |
| 78 | 04/25/2022 | 11:06 AM | 612-662-4205 | 3 MIN CALL |
| 79 | 04/25/2022 | 11:58 AM | 612-662-4205 | MISSED CALL |
| 80 | 04/25/2022 | 11:59 AM | 612-662-4205 | MISSED CALL |
| 81 | 04/25/2022 | 2:29 PM | 612-662-4205 | MISSED CALL |
| 82 | 04/25/2022 | 2:31 PM | 612-662-4205 | MISSED CALL |
| 83 | 04/25/2022 | 2:39 PM | 612-662-4205 | MISSED CALL |
| 84 | 04/25/2022 | 2:40 PM | 612-662-4205 | MISSED CALL |
| 85 | 04/25/2022 | 2:58 PM | 612-662-4205 | MISSED CALL |
| 86 | 04/25/2022 | 2:59 PM | 612-662-4205 | MISSED CALL |
| 87 | 04/25/2022 | 3:21 PM | 612-662-4205 | 17 SEC |
| 88 | 04/26/2022 | 9:34 AM | 612-662-4205 | MISSED CALL |

| 89 | 04/26/2022 | 9:35 AM | 612-662-4205 | MISSED CALL |
|---|---|---|---|---|
| 90 | 04/26/2022 | 1:12 PM | 612-662-4205 | MISSED CALL |
| 91 | 04/26/2022 | 1:13 PM | 612-662-4205 | MISSED CALL |
| 92 | 04/26/2022 | 1:54 PM | 612-662-4205 | MISSED CALL |
| 93 | 04/26/2022 | 2:33 PM | 929-305-1045 | TEXT |
| 94 | 04/26/2022 | 3:09 PM | 612-662-4205 | MISSED CALL |
| 95 | 04/26/2022 | 3:10 PM | 612-662-4205 | MISSED CALL |
| 96 | 04/26/2022 | 3:11 PM | 612-662-4205 | MISSED CALL |
| 97 | 04/26/2022 | 4:22 PM | 612-662-4205 | MISSED CALL |
| 98 | 04/27/2022 | 9:49 AM | 612-662-4205 | MISSED CALL |
| 99 | 04/27/2022 | 10:00 AM | 612-662-4205 | MISSED CALL |
| 100 | 04/27/2022 | 10:01 AM | 612-662-4205 | MISSED CALL |
| 101 | 04/27/2022 | 10:02 AM | 612-662-4205 | MISSED CALL |
| 103 | 04/27/2022 | 12:04 PM | 612-662-4205 | MISSED CALL |
| 103 | 04/27/2022 | 2:27 PM | 929-305-1045 | TEXT |
| 104 | 04/27/2022 | 4:53 PM | 612-662-4205 | MISSED CALL |
| 105 | 04/28/2022 | 9:06 AM | 929-305-1045 | Text |
| 106 | 05/02/2022 | 5:49 PM | 516-376-3680 | Text |
| 107 | 05/05/2022 | 3:23 PM | 516-376-3680 | Text |
| 108 | 06/30/2022 | 2:57 PM | 612-662-4205 | 3 MIN 15 SEC |
| 109 | 08/10/2022 | 11:19 AM | 612-662-4205 | MISSED CALL |
| 110 | 08/22/2022 | 2:54 PM | 612-662-4205 | MISSED CALL |
| 111 | 08/22/2022 | 3:12 PM | 612-662-4205 | MISSED CALL |

60.    Defendants do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents.  Plaintiff is a Texas resident.

61.    The https://direct.sos.state.tx.us/telephone/telephonesearch.asp site ("Texas Registration Database") does not contain any of the Defendants' registration.

62.    Plaintiff searched the Texas Secretary of State on August 25, 2022 and did not find a valid Texas Solicitation Registration on file for any of the Defendants.

63.    Defendants don't qualify for an exemption under § 302.053.

64.    These telephone solicitations constituted "calls" under the TCPA that were not for

emergency purposes.

65.     Defendant Western participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful illegal phone calls, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful illegal phone calls.

66.     Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

67.     Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

68.     No emergency necessitated the calls.

69.     On information and belief, Defendants Western and JaScott did not have a written do-not-call policy while it was sending Mr. Callier unsolicited calls.

70.     On information and belief, the Defendants Western and JaScott did not train their agents who engaged in telemarketing on the existence and use of any do-not-call list.

## VICARIOUS LIABILITY OF DEFENDANT WESTERN FOR CALLS PLACED BY DEFENDANT JASCOTT

71.     Defendant Western is vicariously liable under the theories of implied authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

72.     "A[n] entity may be held vicariously liable for violations of the TCPA 'under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification.'" Aranda v. Caribbean Cruise Line, Inc., 179 F. Supp. 3d 817, 831 (N.D. Ill. 2016) (Quoting In re Joint Petition filed by Dish Network, LLC, 28 F.C.C. R. 6574, 6582 ¶ 28 (2013)). "Formal Agency" in this context means actual authority, which may be express or implied. Id.

73.     Defendant Western gave express authority and apparent authority to Defendant JaScott with full knowledge the administration of sales and solicitation of sales would be conducted via TCPA violating phone calls.

74.     Defendant Western participated in the phone calls made by Defendant Scott and worked hand in hand with JaScott.

75.     Defendant Western knew Plaintiff did not want phone calls from JaScott or Western via numerous "do not call" requests.   Western was on full notice Plaintiff did not want the phone calls soliciting their MCA loans and did nothing to stop the calls from happening.

76.     JaScott made the phone calls to Plaintiff at the direction of Western and for the benefit of Western.

77.     Defendant Western failed to take even the most basic steps to stop the phone calls from happening despite at least four "do not call" requests from Plaintiff.

78.     Defendant Western was well aware Plaintiff did not want phone calls soliciting their MCA loans and that Defendant JaScott was soliciting Plaintiff on behalf of Defendant Western, and Defendant Western did nothing to stop the phone calls.

79.    On April 12, 2022, Date Defendant JaScott "handed over" Plaintiff to Defendant Western showing Defendant Western coordinated closely with JaScott, was aware of JaScott's calling activities and exercised control over JaScott.  *Exhibit B.*

80.    Defendant JaScott had both express and apparent authority as evidenced by the coordination in paragraph 76.

81.    Defendant Western ratified the behavior of Defendant JaScott when it allowed Defendant JaScott to continue calling Plaintiff with full and direct knowledge of the fact Plaintiff did not want, or consent to, the phone calls.

82.    Defendant Western exercised control over JaScott.  Plaintiff will get the exact details of the relationship and degree of control of Western over JaScott during discovery.

## THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE
## DETERRENT EFFECT AND PURPOSE OF THE TCPA

83.    As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

84.    Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

85.    No emergency necessitated the calls.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

86.    Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy.

87.     Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

88.     Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

89.     Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage space, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

### Plaintiff's Cell Phone is a Residential Number

90.     The calls were to Plaintiff's cellular phone which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose.

### Violations of the Texas Business and Commerce Code 305.053

91.     The actions of the defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violates 47 USC 227(b). The calls by Defendants violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

92.     The calls by Defendants violated Texas law by spoofing the caller IDs per 47 USC 227(e) which in turn violates the Texas statute.

### Violations of the Texas Business and Commerce Code § 302.101

16

93.    The actions of the defendants violated the Texas Business and Commerce Code 302.101

by placing solicitation phone calls to a Texas resident without having a registration certificate

and bond on file with the Texas Secretary of State.

94.    Texas Business and Commerce Code § 302.101 provides a private right of action.  A

violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E,

Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by

Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code §

302.303.

95.    The use or employment by any person of a false, misleading, or deceptive act or practice"

causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

96.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a

telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas],"

(2) "unless the [person] holds a registration certificate for the business location from which the

telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

97.    Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek

damages of up to $5000 per violation under §302.101.

## CAUSES OF ACTION:

## COUNT ONE:
**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 U.S.C. 227(c), and 47 C.F.R. §
64.1200(C))**

98.    Plaintiff realleges and incorporates by reference each and every allegation set forth in the

preceding paragraphs.

99.    Defendants called Plaintiff's private residential telephone number which was successfully

registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls

for the purposes of commercial solicitation, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

100.    Plaintiff was statutorily damaged at least 111 times under 47 U.S.C. § 227(c)(3)(F) by Defendants by the telemarketing calls described above, in the amount of $500.00 per call.

101.    Plaintiff was further statutorily damaged because Defendants willfully and/ or knowingly violated this subsection of the TCPA. Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful and/or knowing violation.

102.    Plaintiff is entitled to an award up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

## COUNT TWO:
### Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d)
### (Against All Defendants)

103.    Plaintiff incorporates the forgoing allegations as if fully set forth herein.

104.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking the following:

   a.   A written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1) [1];

   b.   Training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2) [2]; and,

---

[1] *See id.* at 425 (codifying a June 26, 2003 FCC order).
[2] *See id.* at 425 (codifying a June 26, 2003 FCC order).

c.   In the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).[3]

110.   Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

111.   Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5).

## COUNT THREE:
### Violations of The Texas Business and Commerce Code 305.053
### (Against All Defendants)

112.   Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation under §302.101.

113.   Plaintiff incorporates the foregoing allegations as if set forth herein.

114.   The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 305.053, by making non-emergency telemarketing unauthorized calls to Plaintiff's cellular telephone number without his prior express written consent in violation of 47 U.S.C. § 227 et seq. Defendants violated 47 U.S.C. § 227(d) and 47 U.S.C. § 227(d)(3) and 47 U.S.C. § 227(e) by using an ATDS that does not comply with the technical and procedural standards under this subsection. 115.   Plaintiff is entitled to an award of at least $500 in damages for each such violation. Texas Business and Commerce Code 305.053(b).

116.   Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. Texas Business and Commerce Code 305.053(c).

---

[3] *See id.* at 425 (codifying a June 26, 2003 FCC order

**COUNT FOUR:**
**(Violations of The Texas Business and Commerce Code 302.101)**
**(Against All Defendants)**

117.    Plaintiff incorporates the foregoing allegations as if set forth herein. by reference each and every allegation set forth in the preceding paragraphs.

118.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the Texas Business and Commerce Code 302.101, by making non-registered solicitation calls to Plaintiff's cellular telephone number without his prior express written consent.

119.    Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. Texas Business and Commerce Code 302.302(a).

120.    Plaintiff is entitled to an award of all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees and attorney's fees.  Texas Business and Commerce Code 302.302(d).

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A.      Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.      A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.      An award of $1500 per call in statutory damages arising from the TCPA §227(c) intentional violations jointly and severally against the corporations for 101 calls.

D.      An award of $1,500 in statutory damages arising from violations of the Texas Business and Commerce code 305.053

E.      An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

F.      An award to Plaintiff of damages, as allowed by law under the TCPA;

G.      An award to Plaintiff of interest, costs and attorneys' fees, as allowed by law and equity.

H.      Such further relief as the Court deems necessary, just, and proper.

## JURY DEMAND

Plaintiff requests a trial by jury of all claims that can be so tried.

August 26, 2022,                          Respectfully Submitted,

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604
Callier74@gmail.com