**RECEIVED**

January 24, 2023

CLERK, U.S. DISTRICT COURT
WESTERN DISTRICT OF TEXAS

BY:＿＿＿Michael Trujillo＿＿＿

DEPUTY

**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF TEXAS**
**EL PASO DIVISION**

| | |
|---|---|
| **BRANDON CALLIER,** §<br>§<br>§<br>**Plaintiff,** §<br>§<br>**v.** §<br>§<br>**PAC WESTERN FINANCIAL LLC,** a Utah §<br>Limited Liability Company and **JASCOTT** §<br>**ENTERPRISES, LLC** a Florida Limited Liability §<br>Company, **JASCOTT INVESTMENTS, LLC,** a §<br>Texas Limited Liability Company, **MITCHELL** §<br>**SCOTT, UPWISE CAPITAL, LLC** a Delaware §<br>Limited Liability Company and **JOHN DOES 1-4** §<br>§<br>**Defendants.** §<br>§ | **CAUSE NO: EP-22-CV-00301-FM** |

**PLAINTIFF'S FIRST AMENDED COMPLAINT**

COMES NOW PLAINTIFF Brandon Callier with his First Amended Complaint and will allege and show as follows:

**PARTIES**

1.     Plaintiff BRANDON CALLIER ("Plaintiff") is a natural person, resident of the Western District of Texas, and was present in Texas for all calls, in this case in El Paso County, Texas.

2.     Defendant PAC WESTERN FINANCIAL LLC dba UPWISE CAPITAL FUNDING ("Western") is a limited liability company organized and existing under the laws of Utah and can be served via Register Agent Corporation Service Company at 15 West South Temple, Suite 600, Salt Lake, Utah, 84101.

1

3.      Defendant JASCOTT ENTERPRISES, LLC ("JaScott") is a limited liability company organized and existing under the laws of Florida, and can be served via registered agent Rodney Hubbard, 14285 Midway Road, Ste 130, Addison, Texas 75001.

4.      JASCOTT INVESTMENTS, LLC ("Investments") is a limited liability company organized and existing under the laws of Texas and can be served via registered agent Rodney Hubbard, 1222 Merit Drive, Ste 1200, Dallas, Texas 75251.

5.      Defendant MITCHELL SCOTT ("Scott") is the managing director of Defendant JaScott and an officer of Defendant Investments.  Scott personally participated in the phone calls alleged herein.  Scott can be served at 15727 Porchlight Lane, Eden Prairie Minnesota 55347.

6.      Defendant UPWISE CAPITAL, LLC ("Upwise") is a limited liability company organized and existing under the laws of Delaware and can be served via registered agent Agents and Corporations, Inc, 1201 Orange Street, STE 600, One Commerce Center, Wilmington, Delaware 19801.

7.      Defendants John Does 1-4 are yet to be identified corporate officers of Defendant Upwise.

8.      Defendants Western, JaScott, Investments, Upwise, and Scott are hereinafter collectively referred to as ("Defendants").

## JURISDICTION AND VENUE

5.      **Jurisdiction.**  This Court has federal-question subject matter jurisdiction over Plaintiff's TCPA claims pursuant to 28 U.S.C. § 1331 because the TCPA is a federal statute. *Mims v. Arrow Fin. Servs., LLC*, 565 U.S. 368, 372 (2012). This Court has supplemental subject matter jurisdiction over Plaintiff's claim arising under Texas Business and Commerce Code 302.101

2

because that claim arises from the same nucleus of operative fact, i.e., Defendants' telemarketing robocalls to Plaintiff; adds little complexity to the case.

6.      **Personal Jurisdiction.**  This Court has general personal jurisdiction over Defendant Investments because it is a Texas corporation.  This Court has specific personal jurisdiction over the remaining Defendants because they have repeatedly placed calls to Texas residents, derive revenue from Texas residents, and they sell goods and services to Texas residents, including the Plaintiff.

9.      **Venue.**  Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(1)-(2) because a substantial part of the events giving rise to the claims—the calls and sale of goods and services directed at Texas residents, including the Plaintiff—occurred in this District and because the Plaintiff resides in this District.  Residing in the Western District of Texas when he received a substantial if not every single call from the Defendants that are the subject matter of this lawsuit.

7.      This Court has venue over the Defendants because the calls at issue were sent by or on behalf of the above-named defendants to the Plaintiff, a Texas resident.

**THE TELEPHONE CONSUMER PROTECTION ACT**

**OF 1991, 47 U.S.C. § 227**

9.      In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and an invasion of privacy to consumers specifically but were also a threat to interstate commerce generally.  *See* S. Rep. No. 102-178, at 2-3 (1991), as reprinted in 1991 U.S.C.C.A.N. 1968, 1969-71.

10.     The TCPA makes it unlawful "to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using an automatic

3

telephone dialing system or an artificial or prerecorded voice … to any telephone number assigned to a … cellular telephone service." 47 U.S.C. § 227(b)(1)(A)(iii).

11.     The TCPA makes it unlawful "to initiate any telephone call to any residential telephone line using an artificial or prerecorded voice to deliver a message without the prior express consent of the called party, unless the call is initiated for emergency purposes, is made solely pursuant to the collection of a debt owed to or guaranteed by the United States, or is exempted by rule or order" of the Federal Communication Commission ("FCC"). 47 U.S.C. § 227(b)(1)(B).

12.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(b). 47 U.S.C. § 227(b)(3).

13.     Separately, the TCPA bans making telemarketing calls without a do-not-call policy available upon demand. 47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(d)(1).

14.     The TCPA provides a private cause of action to persons who receive calls in violation of § 227(c) or a regulation promulgated thereunder. 47 U.S.C. § 227(c)(5).

15.     According to findings of the FCC, the agency vested by Congress with authority to issue regulations implementing the TCPA, automated or prerecorded telephone calls are a greater nuisance and invasion of privacy than live solicitation calls and can be costly and inconvenient.

16.     The FCC also recognizes that "wireless customers are charged for incoming calls whether they pay in advance or after the minutes are used." *In re Rules and Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 FCC Rcd. 14014, 14115 ¶ 165 (2003).

17.     The FCC requires "prior express written consent" for all autodialed or prerecorded telemarketing robocalls to wireless numbers and residential lines.  In particular:[A] consumer's written consent to receive telemarketing robocalls must be signed and be sufficient to show that

4

the consumer: (1) received clear and conspicuous disclosure of the consequences of providing

the requested consent, *i.e.*, that the consumer will receive future calls that deliver prerecorded

messages by or on behalf of a specific seller; and (2) having received this information, agrees

unambiguously to receive such calls at a telephone number the consumer designates. In addition,

the written agreement must be obtained without requiring, directly or indirectly, that the

agreement be executed as a condition of purchasing any good or service.

18.     *In the Matter of Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*,

27 FCC Rcd. 1830, 1844 ¶ 33 (2012) (footnote and internal quotation marks omitted). FCC

regulations "generally establish that the party on whose behalf a solicitation is made bears

ultimate responsibility for any violations." *In the Matter of Rules and Regulations Implementing*

*the Tel. Consumer Prot. Act of 1991*, 10 FCC Rcd. 12391, 12397 ¶ 13 (1995).

19.     The FCC confirmed this principle in 2013, when it explained that "a seller ... may be

held vicariously liable under federal common law principles of agency for violations of either

section 227(b) or section 227(c) that are committed by third-party telemarketers." *In the Matter*

*of the Joint Petition Filed by Dish Network, LLC*, 28 FCC Rcd. 6574, 6574 ¶ 1 (2013).

20.     Under the TCPA, a text message is a call. *Satterfield v. Simon & Schuster, Inc.*, 569 F.3d

946, 951 – 52 (9th Cir. 2009).

21.     A corporate officer involved in the telemarketing at issue may be personally liable under

the TCPA. *E.g.*, *Jackson Five Star Catering, Inc. v. Beason*, Case No. 10-10010, 2013 U.S. Dist.

LEXIS 159985, at *10 (E.D. Mich. Nov. 8, 2013) ("[M]any courts have held that corporate

actors can be individually liable for violating the TCPA where they had direct, personal

participation in or personally authorized the conduct found to have violated the statute." (internal

quotation marks omitted)); *Maryland v. Universal Elections*, 787 F. Supp. 2d 408, 415 – 16 (D.

Md. 2011) ("If an individual acting on behalf of a corporation could avoid individual liability, the TCPA would lose much of its force.").

### The Texas Business and Commerce Code § 302.101

22.     The Texas Business and Commerce code requires sellers to obtain a registration certificate from the Secretary of State in order to make telephone solicitations inside the state of Texas or to residents located in the state of Texas.

23.     The Plaintiff may seek damages for violations of Texas Business and Commerce Code § 302.101 of up to $5,000 per violation, reasonable costs of prosecuting the action, court costs, investigation costs, depositions expenses, witness fees, and attorney's fees.

24.     Texas Business and Commerce Code § 302.101 provides a private right of action. A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

25.     The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

### FACTUAL ALLEGATIONS

26.     Plaintiff personally registered his phone number on the National Do-Not-Call Registry in December 2007.

27.     Plaintiff has been besieged with phone calls related to a merchant cash advance (MCA).

28.     MCAs are unregulated "loans" made via an agreement to purchase future revenues of a business. MCAs are designed to bypass usury laws that prevent companies from charging extraordinary interest rates. MCAs often exceed 50% interest rates.

29.     Defendant Western employs, contracts with and authorizes Independent Sales Organizations ("ISO") to solicit MCAs on their behalf to business owners.

30.     Defendant Western controlled the behavior of the ISOs by instructing the ISOs on which states to call, which hours to call, and what the minimum qualifications were with respect to obtaining an MCA loan: credit score, bankruptcy status, monthly revenue, current MCA loan status, and minimum loan amount.

31.     Plaintiff has been inundated with phone calls from companies offering MCAs. This includes receiving at least 111 phone calls from Defendants JaScott, Investments, and Upwise on behalf of Defendant Western soliciting an MCA.

32.     On April 4, 2022, Plaintiff received the first of at least 111 phone calls from Defendants Western, JaScott, Investments, and Upwise.

33.     Prior to this phone call Plaintiff had never spoken to any of the Defendants, had never filled out an application with any Defendants, had never heard of any of the Defendants, and had never established a business relationship with any of the Defendants.

34.     Each and every phone call received by Plaintiff from Defendant JaScott was placed without prior express written consent and not related to any emergency purpose.

35.     Each and every phone call received by Plaintiff from Defendant Investments was placed without prior express written consent and not related to any emergency purpose.

36.     Each and every phone call received by Plaintiff from Defendant Upwise was placed without prior express written consent and not related to any emergency purpose.

37.     On April 4, 2022, Plaintiff received his first phone call from Defendant Investments' employee and/or agent Mark Fawzy ("Fawzy") from phone number 612-662-4225. Plaintiff did

not answer this phone call. However, Plaintiff continued to receive phone calls from this phone number and later discovered that Defendant Investments was behind the call.

38.　　Defendant Western knew, or should have known, the ISOs they empowered to solicit on their solicit on their behalf would do so via telephone.

39.　　On April 5, 2022, Plaintiff received a text message from 612-662-4225 stating "Can I call you? This is Mark from JaScott Investment. We spoke yesterday." Exhibit A.

40.　　Mark from Defendant Investments continued to call Plaintiff trying to solicit Plaintiff for an MCA.

41.　　On April 12, 2022, Plaintiff filled out an application in order to determine who was behind the repeated attempt to lure Plaintiff into a high-interest MCA.

42.　　On April 12, 2022, Plaintiff received a text message from phone number 612-662-4205 stating, "Hey Brandon, This is Mark (Fawzy) over here from JaScott Investment, I got good news for you call me back please." Exhibit B.

43.　　On April 12, 2022, at 5:01 PM Plaintiff received an email from Dave Thurber ("Thurber"), a funding manager of Upwise, stating "I will be assisting with the closing process here. Per Mark's email, please send over the business voided check and your driver's license. We will send you contracts sometime tomorrow after we have received both." Exhibit C.

44.　　Prior to this email Plaintiff had never heard of Upwise. Plaintiff did not fill out an application with Upwise. Plaintiff had no business relationship with Upwise, and Plaintiff never consented to receive emails from Upwise.

45.　　Plaintiff did not ask Defendant Investments to give his phone number or contact information to Defendant Upwise, and Plaintiff never consented to receive phone calls or text messages from Defendant Upwise.

8

46.     Plaintiff sent his driver's license and voided check in order to learn the identity of the MCA lender.

47.     On April 13, 2022, Plaintiff was sent a contract via email from Defendant Pac Western. The contract sent to Plaintiff states "PAC WESTERN FINANCIAL LLC DBA UPWISE CAPITAL FUNDING" on at least six pages of the contract.  Exhibit D.

48.     Defendants continued with unsolicited phone calls and text messages attempting to get Plaintiff to sign a contract and take the high-interest MCA.

49.     On April 19, 2022, as a direct result of the phone calls received by Plaintiff from Defendants Plaintiff received an email from Defendant Western containing a contract offer for an MCA and requesting Plaintiff complete the funding process, review the agreement, and send a screenshot or printout of Plaintiff's complete month-to-date bank activity.  Exhibit E.

50.     **DNC Request #1**:  On April 19, 2022, Plaintiff sent a text message to Fawzy at 615-662-4205 stating, "I am getting bombarded with phone calls from funding agencies.  Literally 50 per day.  I can't even work because of the calls.  I don't know whose who.  I'm sending this to everyone.  Nothing personal.  Please don't call or text again.  Exhibit F.

51.     Fawzy ignored Plaintiff and sent Plaintiff a text message two minutes later.  Exhibit G.

52.     Fawzy understood Plaintiff's DNC request as indicated by the text message Fawzy sent to Plaintiff on April 19, 2022, at 4:26 PM from phone number 612-662-4205:

> As you have said you are getting blasted with calls.  Just save my number and my Underwriter (516) 376-3680 as we are the ones who will be getting you funded.  I realize we are in an industry that numbers get back doored and people's numbers get stolen.  I can assure you that was not from us, as our only interest is getting this deal across the finish line and not having our client's harassed.  Please let us know when you have signed the contracts and completed bank verification.  Call/text email me if you have any questions.  Exhibit H.

53.     Defendant Investments understood Plaintiff felt harassed as indicated by the text from paragraph 52.

54.     Phone number (516) 376-3680 from paragraph 52 belongs to Defendant Upwise.

55.     **DNC Request #2**: On April 20, 2022, at 11:03 AM Plaintiff received a phone call from Thurber.  Plaintiff told Thurber he was not interested and to not call again.  Plaintiff then disconnected the phone call.

56.     Plaintiff delivered DNC requests to employees of both Upwise and Investments.

57.     **DNC Request #3**: On April 20, 2022, at 11:03 AM Plaintiff received another phone call from Thurber immediately after the phone call referenced in paragraph 55.  Plaintiff again told Thurber to not call again.

58.     On April 20, 2022, at 11:04 AM Plaintiff received a text message from phone number 516-376-3680, the phone number owned by Thurber, stating "So will you be signing..?  I'll text you since you don't want me to call."  Exhibit I.

59.     **DNC Request #4**: On April 20, 2022, at 12:36 PM Plaintiff received a phone call from 612-662-4205.  Plaintiff answered the phone call and asked Fawzy "Didn't I say don't call anymore?"

60.     On April 21, 2022, Plaintiff received an email from Fawzy stating "I am really sorry to hear you are getting bombarded with so many calls from so many financial companies but here is the thing I am your money guy....Please check your inbox you got the contract paper from info@pacwesternfinancial.com."  Exhibit J.

61.     The April 21, 2022, email included Defendant Scott, the managing director of Defendant Investments, and Dave Thurber in the CC line.

62.     Defendant Scott was well aware and on notice, Plaintiff was being harassed and did nothing to stop the unwanted phone calls and text messages.

63.     Fawzy explicitly made the phone call in paragraph 59 on behalf of Defendant Western in an attempt to coerce Plaintiff into signing the contract despite Plaintiff delivering multiple DNC requests to Fawzy.

64.     Fawzy acknowledged in paragraph 60 he had indeed received Plaintiff's message informing him of a "bombardment" of phone calls and asking him to not call Plaintiff anymore.

65.     Defendants Western, JaScott, Investments, and Upwise called Plaintiff at least 65 times after the initial Do Not Call Request.

66.     On May 2, 2022, Thurber sent Plaintiff a text message stating, "This is Dave @ Upwise. I realize you are getting a million calls." Exhibit K.

67.     Defendants knew Plaintiff was being besieged by phone calls. Defendants knew Plaintiff had made multiple DNC requests. Defendants ignored Plaintiff's pleas to stop the phone calls.

68.     Plaintiff sent internal Do-Not-Call Policy requests to Defendants Western on April 22, 2022, and JaScott on August 24, 2022.

69.     Table below displays calls and text messages made to Plaintiff by Defendants Western, JaScott, Investments, and Upwise:

**TABLE A**

| Number: | Date | Time | Caller ID | Notes |
|---------|------|------|-----------|-------|
| 1 | 04/04/2022 | 12:59 PM | 612-662-4225 | Missed Call |
| 2 | 04/04/2022 | 1:32 PM | 612-662-4225 | Missed Call |
| 3 | 04/05/2022 | 11:37 AM | 612-662-4225 | Declined Call |
| 4 | 04/05/2022 | 11:38 AM | 612-662-4225 | TEXT |
| 5 | 04/05/2022 | 2:48 PM | 612-662-4225 | 3 MIN |
| 6 | 04/06/2022 | 11:10 AM | 612-662-4225 | Missed Call |
| 7 | 04/06/2022 | 4:26 PM | 612-662-4225 | Missed Call |
| 8 | 04/08/2022 | 10:32 AM | 612-662-4225 | Declined Call |
| 9 | 04/08/2022 | 10:33 AM | 612-662-4225 | Text |

| 10 | 04/08/2022 | 1:44 PM | 612-662-4225 | 4 MIN |
|---|---|---|---|---|
| 11 | 04/08/2022 | 2:47 PM | 612-662-4225 | 2 MIN |
| 12 | 04/08/2022 | 2:55 PM | 612-662-4225 | 1 MIN |
| 13 | 04/08/2022 | 2:05 PM | 612-662-4225 | Missed Call |
| 14 | 04/12/2022 | 2:06 PM | 612-662-4205 | TEXT |
| 15 | 04/12/2022 | 2:06 PM | 612-662-4205 | TEXT |
| 16 | 04/12/2022 | 4:16 PM | 612-662-4205 | |
| 17 | 04/12/2022 | 4:56 PM | 612-662-4205 | |
| 18 | 04/12/2022 | 4:58 PM | 612-662-4205 | TEXT |
| 19 | 04/13/2022 | 8:39 AM | 929-305-1045 | TEXT |
| 20 | 04/13/2022 | 8:39 AM | 929-305-1045 | TEXT |
| 21 | 04/13/2022 | 8:39 AM | 929-305-1045 | TEXT |
| 22 | 04/13/2022 | 10:16 AM | 612-662-4205 | 2 MIN |
| 23 | 04/13/2022 | 10:18 AM | 612-662-4205 | TEXT |
| 24 | 04/13/2022 | 12:34 PM | 929-305-1045 | TEXT |
| 25 | 04/13/2022 | 12:46 PM | 612-662-1045 | |
| 26 | 04/13/2022 | 12:47 PM | 612-662-1045 | TEXT |
| 27 | 04/13/2022 | 1:39 PM | 612-662-1045 | DECLINED CALL |
| 28 | 04/13/2022 | 1:40 PM | 612-662-1045 | |
| 29 | 04/13/2022 | 2:56 PM | 612-662-1045 | |
| 30 | 04/13/2022 | 2:57 PM | 612-662-1045 | |
| 31 | 04/13/2022 | 4:31 PM | 612-662-4205 | |
| 32 | 04/14/2022 | 9:22 AM | 612-662-4205 | |
| 33 | 04/14/2022 | 12:41 PM | 612-662-4205 | |
| 34 | 04/14/2022 | 2:32 PM | 612-662-4205 | |
| 35 | 04/15/2022 | 1:00 PM | 612-662-4205 | TEXT MESSAGE |
| 36 | 04/15/2022 | 1:00 PM | 612-662-4205 | TEXT MESSAGE |
| 37 | 04/19/2022 | 7:31 AM | 612-662-4205 | TEXT MESSAGE |
| 38 | 04/19/2022 | 7:31 AM | 612-662-4205 | TEXT MESSAGE |
| 39 | 04/19/2022 | 7:31 AM | 612-662-4205 | TEXT MESSAGE |
| 40 | 04/19/2022 | 9:49 AM | 612-662-4205 | MISSED CALL |
| 41 | 04/19/2022 | 10:05 AM | 612-662-4205 | |
| 42 | 04/19/2022 | 10:12 AM | 612-662-4205 | |
| 43 | 04/19/2022 | 11:21 AM | 516-376-3682 | SPOKE TO CONSTANTS |
| 44 | 04/19/2022 | 11:45 AM | 516-376-4205 | |
| 45 | 04/19/2022 | 2:27 PM | 612-662-4205 | |
| 46 | 04/19/2022 | 2:29 PM | 612-662-4205 | TOLD NEVER TO CALL BACK IN TEXT |
| 47 | 04/19/2022 | 2:29 PM | 612-662-4205 | TEXT MESSAGE |
| 48 | 04/19/2022 | 2:29 PM | 612-662-4205 | TEXT MESSAGE |

| 49 | 04/19/2022 | 2:29 PM | 612-662-4205 | TEXT MESSAGE |
|---|---|---|---|---|
| 50 | 04/19/2022 | 2:29 PM | 612-662-4205 | TEXT MESSAGE |
| 21 | 04/19/2022 | 2:30 PM | 612-662-4205 | 1 Min Phone Call |
| 52 | 04/19/2022 | 2:36 PM | 612-662-4205 | |
| 53 | 04/19/2022 | 3:00 PM | 612-662-4205 | |
| 54 | 04/19/2022 | 4:26 PM | 612-662-4205 | |
| 55 | 04/20/2022 | 9:37 AM | 612-662-4205 | |
| 56 | 04/20/2022 | 11:02 AM | 516-376-3680 | DNC REQUEST |
| 57 | 04/20/2022 | 11:03 AM | 516-376-3680 | CALLED RIGHT BACK ANOTHER DNC REQUEST |
| 58 | 04/20/2022 | 11:04 AM | 516-376-3680 | TEXT CONFIRMING NOT TO CALL REQUEST |
| 59 | 04/20/2022 | 12:36 PM | 612-662-4205 | Hung up after saying "Didn't I say don't call anymore?" |
| 60 | 04/20/2022 | 2:34 PM | 516-376-3680 | TEXT MESSAGE |
| 61 | 04/20/2022 | 2:34 PM | 516-376-3680 | TEXT MESSAGE |
| 62 | 04/21/2022 | 2:53 PM | 612-662-4205 | |
| 63 | 04/21/2022 | 4:09 PM | 612-662-4205 | Missed call |
| 64 | 04/21/2022 | 4:09 PM | 612-662-4205 | TEXT MESSAGE |
| 65 | 04/21/2022 | 4:53 PM | 612-662-4205 | |
| 66 | 04/22/2022 | 9:19 AM | 612-662-4205 | Missed Call |
| 67 | 04/22/2022 | 9:47 AM | 612-662-4205 | |
| 68 | 04/22/2022 | 10:56 AM | 612-662-4205 | |
| 69 | 04/22/2022 | 12:27 PM | 612-662-4205 | |
| 70 | 04/22/2022 | 1:15 PM | 612-662-4205 | |
| 71 | 04/22/2022 | 1:30 PM | 612-662-4205 | |
| 72 | 04/22/2022 | 1:31 PM | 612-662-4205 | TEXT MESSAGE |
| 73 | 04/22/2022 | 1:32 PM | 612-662-4205 | Missed Call |
| 74 | 04/22/2022 | 1:38 PM | 612-662-4205 | TEXT MESSAGE |
| 75 | 04/22/2022 | 1:38 PM | 612-662-4205 | TEXT MESSAGE |
| 76 | 04/22/2022 | 2:46 PM | 612-662-4205 | 2 MISSED CALLS |
| 77 | 04/22/2022 | 3:40 PM | 612-662-4205 | MISSED CALL |
| 78 | 04/25/2022 | 11:06 AM | 612-662-4205 | MISSED CALL |
| 79 | 04/25/2022 | 11:58 AM | 612-662-4205 | MISSED CALL |
| 80 | 04/25/2022 | 11:59 AM | 612-662-4205 | MISSED CALL |
| 81 | 04/25/2022 | 2:29 PM | 612-662-4205 | MISSED CALL |
| 82 | 04/25/2022 | 2:31 PM | 612-662-4205 | MISSED CALL |
| 83 | 04/25/2022 | 2:39 PM | 612-662-4205 | MISSED CALL |
| 84 | 04/25/2022 | 2:40 PM | 612-662-4205 | MISSED CALL |

| 85 | 04/25/2022 | 2:58 PM | 612-662-4205 | MISSED CALL |
| 86 | 04/25/2022 | 2:59 PM | 612-662-4205 | MISSED CALL |
| 87 | 04/25/2022 | 3:21 PM | 612-662-4205 | 17 SEC |
| 88 | 04/26/2022 | 9:34 AM | 612-662-4205 | MISSED CALL |
| 89 | 04/26/2022 | 9:35 AM | 612-662-4205 | MISSED CALL |
| 90 | 04/26/2022 | 1:12 PM | 612-662-4205 | Missed Call |
| 91 | 04/26/2022 | 1:13 PM | 612-662-4205 | Missed Call |
| 92 | 04/26/2022 | 1:54 PM | 612-662-4205 | Missed Call |
| 93 | 04/26/2022 | 2:33 PM | 612-662-4205 | Text |
| 94 | 04/26/2022 | 3:09 PM | 612-662-4205 | Missed Call |
| 95 | 04/26/2022 | 3:10 PM | 612-662-4205 | Missed Call |
| 96 | 04/26/2022 | 3:11 PM | 612-662-4205 | Missed Call |
| 97 | 04/26/2022 | 4:22 PM | 612-662-4205 | Missed Call |
| 98 | 04/27/2022 | 9:49 AM | 612-662-4205 | Missed Call |
| 99 | 04/27/2022 | 10:00 AM | 612-662-4205 | Missed Call |
| 100 | 04/27/2022 | 10:01 AM | 612-662-4205 | Missed Call |
| 101 | 04/27/2022 | 10:02 AM | 612-662-4205 | Missed Call |
| 103 | 04/27/2022 | 12:04 PM | 612-662-4205 | Missed Call |
| 103 | 04/27/2022 | 2:27 PM | 612-662-4205 | TEXT |
| 104 | 04/27/2022 | 4:53 PM | 612-662-4205 | Missed Call |
| 105 | 04/28/2022 | 9:06 AM | 612-662-4205 | Text |
| 106 | 05/02/2022 | 5:49 AM | 612-662-4205 | Text |
| 107 | 05/05/2022 | 3:23 PM | 612-662-4205 | Text |
| 108 | 06/30/2022 | 2:57 PM | 612-662-4205 | 3 MIN 15 SEC |
| 109 | 08/10/2022 | 11:19 AM | 612-662-4205 | MISSED CALL |
| 110 | 08/22/2022 | 2:54 PM | 612-662-4205 | MISSED CALL |
| 111 | 08/22/2022 | 3:12 PM | 612-662-4205 | MISSED CALL |

70.     Plaintiff searched the Texas Secretary of State on August 25, 2022, and did not find a valid Texas Solicitation Registration as required by Texas Business and Commerce Code 302.101 for any of the Defendants.

71.     Defendants do not have a solicitation registration certificate on file with the Texas Secretary of State as required to make telephone solicitations to Texas residents. Plaintiff is a Texas resident.

72.     Defendant Western participated in, facilitated, directed, authorized, knew of, or willfully ignored the unlawful robocalling, while knowing facts that required a reasonable person to investigate further, and approved, and ratified the conduct of their employees, agents, and co-conspirators to engage in the false and misleading sales practices and unlawful robocalling.

73.     Defendant Western was aware or should have been aware, of the actions taken by Defendant Upwise and Defendant Investments on their behalf.

74.     Defendant Western was aware or should have been aware, Defendant Upwise and Defendant Investments were making repeated harassing phone calls and ignoring DNC requests on their behalf.

75.     Defendant Western turned a willfully blind eye to the actions undertaken by the ISOs, Defendants Investments, and Upwise, that they employed to solicit their MCA products.

76.     Each and every call was placed without the maintenance of an internal do-not-call policy. Each and every call failed to identify the telemarketers and parties they were calling on behalf of. Each and every call was placed without training their agents/employees on the use of an internal do-not-call policy.

77.     Plaintiff has limited data storage capacity on his cellular telephone. Incoming telemarketing calls consumed part of this capacity.

78.     No emergency necessitated the calls.

79.     On information and belief, Defendants Western, Upwise, Investments and JaScott did not have a written do-not-call policy while it was sending Mr. Callier unsolicited calls.

80.     On information and belief, the Defendants Western, Upwise, Investments, and JaScott did not train their agents who engaged in telemarketing on the existence and use of any do-not-call list.

15

**VICARIOUS LIABILITY OF DEFENDANT WESTERN FOR CALLS PLACED BY**

**DEFENDANT INVESTMENTS AND DEFENDANT UPWISE**

81.    Defendant Western is vicariously liable under the theories of implied authority, apparent authority, and ratification, and as well as liable because any other result would impair the underlying purpose of the TCPA.

82.    "A[n] entity may be held vicariously liable for violations of the TCPA 'under a broad range of agency principles, including not only formal agency, but also principles of apparent authority and ratification.'" Aranda v. Caribbean Cruise Line, Inc., 179 F. Supp. 3d 817, 831 (N.D. Ill. 2016) (Quoting In re Joint Petition filed by Dish Network, LLC, 28 F.C.C. R. 6574, 6582 ¶ 28 (2013)). "Formal Agency" in this context means actual authority, which may be express or implied. Id.

83.    Defendant Western gave express authority and implied authority to Defendant Investments with full knowledge the administration of sales and solicitation of sales would be conducted via TCPA-violating phone calls.

84.    Defendant Western knew or should have known, Plaintiff did not want phone calls from Defendant Investments or Defendant Upwise via numerous "do not call" requests.   Western was on full notice Plaintiff did not want the phone calls soliciting their MCA loans and did nothing to stop the calls from happening.

85.    Defendants Investments and Upwise made the phone calls to Plaintiff at the direction of Western and for the benefit of Western.

86.    Defendant Western failed to take even the most basic steps to police the actions of those it authorized to solicit their products despite at least four "do not call" requests from Plaintiff.

16

Western turned a blind eye to the actions of their authorized solicitors and refused to ensure that their sanctioned solicitors honored repeated do-not-call requests.

87.     Defendants Investments and Upwise had both express and apparent authority to act on behalf of Defendant Western pursuant to an agreement that compensated Investments and Upwise for phone calls and referrals made on behalf of Defendant Western.

88.     Defendant Western ratified the behavior of Defendants Investments and Upwise when it allowed Defendants Investments and Upwise to continue calling Plaintiff with full and direct knowledge of the fact Plaintiff did not want, or consent to, the phone calls.

89.     Defendant Western exercised control over Investments and Upwise. Plaintiff will get the exact details of the relationship and degree of control of Western over Investments and Upwise during discovery.

## JASCOTT INVESTMENTS LLC AND JASCOTT ENTERPRISES LLC ARE A COMMON ENTERPRISE

90.     Defendant JaScott and Defendant Investments share common ownership, a common email domain, common phone numbers, and a common office address.

91.     Defendant Investments' employees and/or agents use the website of Defendant JaScott, https://www.jascott.org/, to conduct business. Exhibit L.

92.     Defendant Investments' employees and/or agents use Defendant JaScott's phone number and email domain for conducting business. Exhibit J, Exhibit L

93.     Defendant JaScott and Defendant Investments share common ownership. Exhibit M.

94.     Defendant JaScott and Defendant Investments market themselves as nearly the same company and are indistinguishable to a layperson.

17

95.    Each email Plaintiff received from employees and/or agents of JaScott and/or

Investments came from a domain registered to Defendant JaScott.

96.    Defendants JaScott and Investments operate with such overlap that they confused

Plaintiff into believing that they are one and the same entity.

97.    Defendants JaScott and Investments should be held jointly and severally liable because

they operate in such a way that makes them nearly indistinguishable.

## DEFENDANT SCOTT IS PERSONALLY LIABLE FOR TCPA AND TEXAS DTPA VIOLATIONS VIA TEX. BUS. COM. CODE 302.101

98.    Defendant Scott is personally liable under the "participation theory" of liability because

they had direct, personal participation in the conduct that violated the TCPA, or knowingly

authorized such conduct. See, e.g., *Physicians Healthsource, Inc. v. Doctor Diabetic Supply,*

*LLC*, No. 12- 22330-CIV, 2015 WL 3644598, at *3 (S.D. Fla. June 10, 2015).

99.    Defendant Scott knew of Defendant Investments' violations and personally participated

in the phone calls.  Exhibit J, Exhibit N, Exhibit O.

100.    Defendant Scott personally knew and refused to stop the calls.  Defendant Scott

personally called Plaintiff and personally emailed Plaintiff.  Defendant Scott was also copied on

emails and coordinated with Mark Fawzy, Dave Thurber, and Max Williams in their attempt to

coerce Plaintiff into signing the MCA contract.

101.    Defendant Scott had good reason to anticipate he may be hailed into Court in Texas

because he was personally aware of the phone calls and participated in the phone calls.

102.    "If the officer directly participated in or authorized the statutory violation, even though

acting on behalf of the corporation, he may be personally liable.  See *United States v Pollution*

*Serv. Of Oswego, Inc.*, 763 F.2d 133, 134-135 (2nd Cir.1985)

103.    The "well-settled" tort rule provides that "when corporate officers directly participate in or authorized the commission of a wrongful act, even if the act is done on behalf of the corporation, they may be personally liable." *General MotorsClore Acceptance Corp. v. Bates*, 954 F.2d 1081, 1085 (5th Cir. 1992). The Fifth Circuit has elaborated that "the thrust of the general [tort] rule is that the officer to be held personally liable must have some direct, personal participation in the tort, as where the defendant was the 'guiding spirit' behind the wrongful conduct….or the 'central figure' in the challenged corporate activity." *Mozingo v. Correct Mfg. Corp.*, 752 F.2d 168, 174 (5th Cirt. 1985) (Citing *Escude Cruz v. Ortho Pharmaceutical Corp.*, 619 F. 2d 902, 907 (1st Cir.1980)) (Citing *Texas v. American Blastfax, Inc.*, 164 F. Supp. 2d 892 (W.D. Tex. 2001).

104.    Defendant Scott is aware Defendant's conduct violated the TCPA and Tex. DPTA and refused to alter their behavior.  Defendant Scott was made aware of the alleged behavior herein and took no steps to stop the behavior because the behavior benefits him financially.  Defendant Scott violates the TCPA with his eyes and pocketbook wide open.

105.    Defendant Scott should be held jointly and severally liable for both the TCPA violations and Tex. Bus. Com. Code 302.101 via Tex. DTPA because he committed conduct that violated the TCPA and Tex. DTPA, and he actively oversaw and directed this conduct.

106.    Defendant Scott should be held personally liable because to do otherwise would simply allow him to simply dissolve Investments and set up a new corporation and repeat his conduct.  This would result in both the TCPA and DTPA being unenforceable.

## THE SELLERS SHOULD BE HELD LIABLE TO UPHOLD THE
## DETERRENT EFFECT AND PURPOSE OF THE TCPA

107.    As the court ruled in Jackson v Caribbean Cruise Line, Inc., the defendant sellers should be held liable for their violations of the TCPA. Courts have looked at the purpose of the TCPA

and found that not holding the sellers liable through vicarious liability would undermine the purpose of the TCPA.

## INJURY, HARM, DAMAGES, AND ACTUAL DAMAGES
## AS A RESULT OF THE CALLS

108. Defendants' calls harmed Plaintiff by causing the very harm that Congress sought to prevent—a "nuisance and invasion of privacy.

109. Defendants' calls harmed Plaintiff by trespassing upon and interfering with Plaintiff's rights and interests in Plaintiff's cellular telephone.

110. Defendants' calls harmed Plaintiff by intruding upon Plaintiff's seclusion.

111. Plaintiff has been harmed, injured, and damaged by the calls including, but not limited to: reduced device storage space, reduced data plan usage, anger, frustration, invasion of privacy, and more frequent charging of my cell phone.

### Plaintiff's Cell Phone is a Residential Number

112. The calls were to Plaintiff's cellular phone which is Plaintiff's personal cell phone that he uses for personal, family, and household use. Plaintiff maintains no landline phones at his residence and has not done so for at least 15 years and primarily relies on cellular phones to communicate with friends and family. Plaintiff also uses his cell phone for navigation purposes, sending and receiving emails, timing food when cooking, and sending and receiving text messages. Plaintiff further has his cell phone registered in his personal name, pays the cell phone from his personal accounts, and the phone is not primarily used for any business purpose

### Violations of the Texas Business and Commerce Code 305.053

113. The actions of the defendants violated the Texas Business and Commerce Code 305.053 by placing automated calls to a cell phone which violates 47 USC 227(b). The calls by

20

Defendants violated Texas law by placing calls with a pre-recorded message to a cell phone which violate 47 USC 227(c)(5) and 47 USC 227(d) and 47 USC 227(d)(3) and 47 USC 227(e).

114.    The calls by Defendants violated Texas law by spoofing the caller IDs per 47 USC 227(e) which in turn violates the Texas statute.

### Violations of the Texas Business and Commerce Code § 302.101

115.    The actions of the defendants violated the Texas Business and Commerce Code 302.101 by placing solicitation phone calls to a Texas resident without having a registration certificate and bond on file with the Texas Secretary of State.

116.    Texas Business and Commerce Code § 302.101 provides a private right of action.  A violation of Chapter 302 "is a false, misleading, or deceptive act or practice under Subchapter E, Chapter 17" and is enforceable as such: "A public or private right or remedy prescribed by Subchapter E, Chapter 17, may be used to enforce [Chapter 302." Tex. Bus. & Com. Code § 302.303.

117.    The use or employment by any person of a false, misleading, or deceptive act or practice" causes "economic damages or damages for mental anguish." Tex. Bus. & Com. Code § 17.50.

118.    Texas Business and Commerce Code §302.101 states that a person (1) "may not make a telephone solicitation" (a) "from a location in [Texas]" or (b) "to a purchaser located in [Texas]," (2) "unless the [person] holds a registration certificate for the business location from which the telephone solicitation is made." Tex. Bus. & Com. Code § 302.101(a).

119.    Under Texas Business and Commerce Code § 302.302 Plaintiff is entitled to seek damages of up to $5000 per violation under §302.101.

### CAUSES OF ACTION

### I.      FIRST CLAIM FOR RELIEF

**(Violation of the TCPA "Sales Call/DNC" Prohibition, 47 C.F.R. § 64.1200(c), 47 U.S.C. § 227(c) et seq.)**

**(Against All Defendants)**

120.   Plaintiff incorporates and realleges, as though fully set forth herein, paragraphs 1-119.

121.   Defendants called Plaintiff's private residential telephone number which was successfully registered on the National Do-Not-Call Registry more than thirty-one (31) days prior to the calls, in violation of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2).

122.   Plaintiff was statutorily damaged at least one hundred-eleven (111) times under 47 U.S.C. § 227(c)(3)(F) by Defendants by the telephone calls described above, in the amount of $500 per call.

123.   Plaintiff was further statutorily damaged because Defendants willfully or knowlingly violated this subsection of the TCPA.  Plaintiff requests that the court treble the damage amount as permitted under U.S.C. § 227(c)(5) for each and every willful or knowing violation.

124.   As a result of Defendants' and Defendants' agents' violations of 47 U.S.C. § 227(c)(3)(F), and 47 C.F.R. § 64.1200(c)(2), Plaintiff seeks for himself $500 in statutory damages, or $1,500.00 if trebled, for each and every violation, pursuant to 47 U.S.C. § 227(c)(3)(F).

125.   Plaintiff is entitled to an award of up to $1,500 in damages for each knowing or willful violation of 47 U.S.C. § 227(c)(3)(F).

126.   Pursuant to 47 U.S.C. § 227(c)(5)(A), Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making non-emergency telemarketing robocalls to cellular telephone numbers without the prior express written consent of the called party.

## II. SECOND CLAIM FOR RELIEF

### (Telemarketing Without Mandated Safeguards, 47 C.F.R. § 64.1200(d))

### (Against All Defendants)

127.    Plaintiff incorporates and realleges, as though fully set forth herein, paragraphs 1-119.

128.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of FCC regulations by making telemarketing solicitations despite lacking:

1.  a written policy, available upon demand, for maintaining a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(1);

2.  training for the individuals involved in the telemarketing on the existence of and use of a do-not-call list, in violation of 47 C.F.R. § 64.1200(d)(2); and,

3.  in the solicitations, the name of the individual caller and the name of the person or entity on whose behalf the call is being made, in violation of 47 C.F.R. § 64.1200(d)(4).

129.    Plaintiff is entitled to an award of at least $500 in damages for each such violation. 47 U.S.C. § 227(c)(5)(B).

130.    Plaintiff is entitled to an award of up to $1,500 in damages for each such knowing or willful violation. 47 U.S.C. § 227(c)(5)

131.    Plaintiff also seeks a permanent injunction prohibiting Defendants and their affiliates and agents from making telemarketing solicitations until and unless they (1) implement a do-not-call list and training thereon and (2) include the name of the individual caller and AFS's name in the solicitations.

## III. THIRD CLAIM FOR RELIEF

### (Violations of The Texas Business and Commerce Code 302.101)
### (Against All Defendants)

132.    Plaintiff incorporates and realleges, as though fully set forth herein, paragraphs 1-119.

133.    The foregoing acts and omissions of Defendants and/or their affiliates or agents constitute multiple violations of the **Texas Business and Commerce Code 302.101**, by making non-registered solicitation calls to Plaintiff's cellular telephone number and without a valid exemption or Plaintiff prior express written consent.

134.    Plaintiff is entitled to an award of up to $5,000 in damages for each such knowing or willful violation. **Texas Business and Commerce Code 302.302(a).**

135.    Plaintiff is entitled to an award for all reasonable costs of prosecuting the action, including court costs and investigation costs, deposition expenses, witness fees and attorney's fees. **Texas Business and Commerce Code 302.302(d).**

## IV.    PRAYER FOR RELIEF

WHEREFORE, Plaintiff Brandon Callier prays for judgment against the defendants jointly and severally as follows:

A.    Leave to amend this Complaint to name additional DOESs as they are identified and to conform to the evidence presented at trial;

B.    A declaration that actions complained of herein by Defendants violate the TCPA and Texas state law;

C.    An injunction enjoining Defendant and their affiliates and agents from engaging in the unlawful conduct set forth herein;

D.    An award of $3000 per call in statutory damages arising from the TCPA intentional violations jointly and severally against the corporation for 111 calls.

E.    An award of $5,000 in statutory damages arising from violations of the Texas Business and Commerce code 302.101.

F.      An award to Plaintiff of damages, as allowed by law under the TCPA;

G.      An award to Plaintiff of pre-judgment interest and post-judgment interest, and costs as allowed by law.

H.      Such further relief as the Court deems necessary, just, and proper.

January 23, 2023,                              Respectfully submitted,

*Brandon Callier*

Brandon Callier
Plaintiff, Pro Se
6336 Franklin Trail
El Paso, TX 79912
915-383-4604